**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

RANDOLPH W. RENCHARD,

        Plaintiff,

        v.

PRINCE WILLIAM MARINE SALES, INC.,
*et al.*,

        Defendants.

Civil Action No. 13-698 (BAH)

Judge Beryl A. Howell

---

**MEMORANDUM OPINION**

Pending before the Court are two motions: a Motion for Summary Judgment ("Defs.'
Mot."), ECF No. 49, from the defendants, Price William Marine Sales, Inc. ("PWMS") and
Prince William Marina, Inc. ("PWM"), and a Motion for Leave To File Verified Second
Amended Complaint ("Pl.'s Mot."), ECF No. 51, from the plaintiff, Randolph W. Renchard.
Given the already lengthy history of this action, and the persistence of fundamental factual
disputes, the Court denies the plaintiff's motion for leave to file and grants in part and denies in
part the defendants' Motion for Summary Judgment.[1]

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The facts of this matter as pleaded in the First Amended Complaint are discussed at
length in *Renchard v. Prince William Marine Sales, Inc.* (*Renchard I*), 28 F. Supp. 3d 1, 3–7
(D.D.C. 2014).  Nevertheless, a brief summary of the facts is provided here to give context to the
Court's ruling.  The plaintiff is "profoundly and pre-linguistically deaf and uses American Sign

---

[1] The defendants have requested oral argument on the pending motion, Defs.' Mot. at 1, but given the sufficiency of
the parties' written submissions to resolve the pending motions, this request is denied.  *See* LCvR 7(f) (allowance of
oral hearing is "within the discretion of the court").

Language for daily communication." *Renchard I*, 28 F. Supp. 3d at 3.  In May 2009, after liquidating his trust fund and trading in his previous boat, a Bayliner, to constitute a down payment, the plaintiff purchased a "58' Sea Ray," a luxury yacht, and financed it through the defendants.  Pl.'s Statement of Disp. Material Facts[2] ("Pl.'s SMF") ¶¶ 11, 13, ECF No. 58-2; *Renchard I*, 28 F. Supp. 3d at 3–4.  The purchase price of the yacht was approximately $1.4 million, with the value of the plaintiff's trade-in boat and liquidated trust fund accounting for approximately $725,000 of the purchase price.  *Renchard* I, 28 F.3d at 3.  Although the yacht was purchased in Virginia, it was "slipped in Columbia Island Marina," in Washington, D.C., and listed Washington D.C. as its hailing port.  *Id.* at 4.

After purchasing the yacht, the plaintiff began to incur charges for maintenance and upgrades.  Pl.'s SMF ¶ 16.  The parties dispute where and when many of these charges were incurred, with the defendants averring that the majority of the maintenance was performed in Virginia, Pl.'s SMF ¶ 71, and the plaintiff averring that there is no documentation showing where the maintenance was performed, *id.*  The parties affirm that they entered some kind of agreement—the parties debate whether it had a written component—whereby the plaintiff would pay $500 per month to the defendants to satisfy the outstanding maintenance charges, hereinafter referred to as the "Plaintiff's Account."  Pl.'s SMF ¶ 16.  The defendants claim that this agreement constituted a "revolving credit account" with Defendant PWMS, while the plaintiff rejects that characterization, citing the agreement's oral nature and lack of terms and conditions. *See id.* ¶¶ 16, 18.

---

[2] The plaintiff's Statement of Disputed Material Facts includes the full text of the defendants' Statement of Material Facts Not in Dispute, as well as the plaintiff's response to each statement of fact.  *Compare* Pl.'s SMF *with* Defs.' Mot. at 3–10 ("Defs.' SMF").  For ease of reference, all citations to the parties statements are to the paragraph, as numbered by the defendant, and accompanying unnumbered response in the Plaintiff's Statement.

The Plaintiff's Account eventually grew to approximately $73,000, including $26,387.08 for the plaintiff's pre-existing mortgage on the Bayliner the plaintiff had traded to the defendants. Pl.'s SMF ¶¶ 23–24. The parties dispute whether the plaintiff agreed, voluntarily, to subsume the prior mortgage, which the parties agree the plaintiff had continued to pay after purchasing the new yacht, into the Plaintiff's Account. *Id.* The parties also dispute whether the plaintiff disclosed the existence of this pre-existing mortgage prior to the sale of the yacht, and whether Carlton Phillips, the "primary owner of PWMS," made any representations regarding the pre-existing mortgage. *See id.*

The defendants assert that on April 13, 2011, approximately eighteen months after the plaintiff purchased the yacht, the plaintiff signed "a handwritten note that he would pay the revolving charge account balance of [at the time] $51,670.80" by the end of June 2011. *Id.* ¶ 28. The plaintiff disputes this characterization, stating that the handwritten note merely shows that the plaintiff "met Carlton Phillips and would try to obtain a loan in order to pay off the amount he owed PWMS in a single lump sum." *Id.* The plaintiff avers that, although he was late on several mortgage payments to PWMS for the yacht, *id.* ¶ 27, he was never late on the payments on his Account, *id.* ¶ 31.

The parties similarly disagree about the meaning of a handwritten note allegedly signed on June 23, 2011. The defendants aver that in this note, the plaintiff stated "he would pay the new revolving charge account balance of $72,810.00 by July 30, 2011." *Id.* ¶ 33. The plaintiff disputes this characterization, agreeing only that the plaintiff had agreed, at Defendant PWMS' request, to attempt to secure a loan to pay the balance of his account. *Id.* The plaintiff states that his signature on this document, as was the case on the previous document, did not signify agreement, but merely that he was present at the meeting, per Mr. Phillips' representations to the

plaintiff.  *See id.*  The parties also dispute the status of the Plaintiff's Account, with the

defendants contending that the plaintiff still "owes" the defendants $73,000 and the plaintiff

contending that he no longer owes the money.  *Id.* ¶ 35.  The plaintiff did not secure a loan to pay

off the entire amount of his Account.  *Id.* ¶ 36.  The plaintiff avers that he continued to pay his

$500 monthly installments, while the defendant contends that the plaintiff's last $500 payment

"occurred between August 16-18, 2011."  *Id.* ¶ 38.

The parties vigorously disagree about what happened following the date on which the

defendants assert the plaintiff had promised to pay his Account in full, and failed to do so.  The

defendants contend that the plaintiff "voluntarily agreed to turn into PWMS the yacht, as he was

unable to continue to afford it."  Pl.'s SMF ¶ 41.  To bolster their version of events, the

defendants have submitted an affidavit from one of their employees stating that when he arrived

to take the yacht back to PWMS, he found a group of people on the boat and the employee

contacted the plaintiff to come to the Marina to remove them.  *Id.* ¶ 44; *see also* Defs.' Mem.

Supp. Defs.' Mot. ("Defs.' Mem.") Ex. K (Aff. of Michael Minor, Shop Foreperson, PWMS

("Minor Aff.")) ¶ 2, ECF No. 49-12.  The employee states that the plaintiff arrived, "took the

people off the Yacht," and did not object when the employee left with the yacht.  *Id.* ¶ 3.

The plaintiff avers that he "never stated to anyone that [he] wanted to or had to 'turn in'

[his] yacht."  Pl.'s SMF ¶ 41.  Moreover, the plaintiff directly contradicts the Minor Affidavit in

all respects, stating he never met the employee at the marina, never allowed a group of people to

use his boat, and did not witness his boat being removed.  *Id.*  Nevertheless, the parties agree that

the defendants' employee took the yacht back to the defendants' marina in Woodbridge,

Virginia, between September 8 and September 16, 2011.  Minor Aff. ¶ 1; Pl.'s SMF ¶ 44.

The defendants state that they notified the plaintiff that the yacht would be put up for sale and that the plaintiff needed to remove his belongings.  Pl.'s SMF ¶¶ 46–49.  The plaintiff disputes receiving certain communications, *id.* ¶ 45, attending a meeting the defendants' contend occurred in Virginia on October 4, 2011, *id.* ¶ 46, understanding why the boat was being sold, *id.* ¶ 47, the reason why the plaintiff removed his personal items from the boat, *id.* ¶ 48, and for what reason the boat had been seized, aside from the yacht having "been taken for satisfaction of [the plaintiff's] debt to Prince William Marine Sales," without specifying which debt, the mortgage or the Account, the boat was taken to satisfy, *id.* ¶ 49.

The defendants submit that the plaintiff further evinced his understanding of circumstances of the yacht's removal because the plaintiff "voluntarily signed [a] Bill of Sale, transferring the Yacht, identified by its name and hull number, back to PWMS."  Pl.'s SMF ¶ 56.  The plaintiff disputes this contention, stating that he "did not understand the bill of sale forwarded to him and it was not explained to him although he called PWMS seeking clarification" as to what he was signing and why.  *Id.* ¶¶ 54–55.  The plaintiff contends that his request for clarification was rebuffed by one of the defendants' employees.  *Id.*

The defendants also cite the plaintiff's transfer of the yacht's third party warranty to the yacht's subsequent owner as evidence of the plaintiff's acquiescence to the sale of the yacht.  Pl.'s SMF ¶ 57.  The plaintiff states that he had never seen the document submitted by the defendants purportedly bearing the plaintiff's signature and transferring the warranty to the yacht's new owner prior to litigation, "would not have understood it if he had seen it," and "contends that his signature on this document is a forgery."  *Id.* (referencing Defs.' Ex. 269).

The defendants have filed two motions to dismiss this matter after removing it from D.C. Superior Court, Defs.' Mot. Dismiss ("Defs.' 1st MTD") at 1, ECF No. 5; Defs.' Mot. Dismiss

("Defs.' 2d MTD") at 1, ECF No. 22, and a Motion to Transfer this matter to the Eastern District of Virginia, Defs.' Mot. Transfer ("Defs.' Transfer Mot.") at 1, ECF No. 4.  The motion to transfer and first motion to dismiss were denied in part and granted in part by this Court in *Renchard I*, and the second motion to dismiss was denied in part and granted in part at a hearing held May 22, 2014.  The plaintiff filed his First Amended Complaint ("FAC"), ECF No. 31, with the consent of the defendants in June 2014, which remains the operative complaint.

The FAC contains eight causes of action: Count One for "Wrongful Repossession/Conversion," FAC ¶¶ 82–97; Count Two for alleged violations of the District of Columbia Consumer Protection Procedures Act ("CPPA"), *id.* ¶¶ 98–114; Count Three for negligence, *id.* ¶¶ 115–20; Count Four for gross negligence, *id.* ¶¶ 121–23; Count Five for "Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing," *id.* ¶¶ 124–33; Count Six for Unjust Enrichment, *id.* ¶¶ 134–40; Count Seven for Civil Conspiracy, *id.* ¶¶ 141–46; and Count Eight for Fraud, *id.* ¶¶ 147–53.

The proposed second amended complaint, ECF No. 51-1, contains the same factual allegations and counts as the FAC, with the exception of seven additional paragraphs under the heading "Facts Common to the ADA Count," in which the plaintiff describes the factual predicate for a proposed claim against the defendants for alleged violations of the Americans with Disabilities Act.  Prop. 2d Am. Compl. ("PSAC") ¶¶ 82–89.  The PSAC also contains a ninth cause of action for "Discrimination."  *Id.* ¶¶ 162–64.

The defendants' Motion for Summary Judgment and the plaintiff's Motion for Leave to File are now ripe for decision.[3]

---

[3] The plaintiff did not file a reply to the defendants' opposition to the plaintiff's motion for leave to amend.

## II.   LEGAL STANDARD

### A.   Federal Rule Of Civil Procedure 56

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Summary judgment is properly granted against a party who, "after adequate time for discovery and upon motion, . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The burden is on the moving party to demonstrate that there is an "absence of a genuine issue of material fact" in dispute. *Id.* at 323.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in favor of the nonmoving party and accept the nonmoving party's evidence as true. *Tolan v. Cotton*, 134 S.Ct. 1861, 1863 (2014) (per curiam); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  As the Supreme Court recently stressed, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan*, 134 S.Ct. at 1866 (quoting *Anderson*, 477 U.S. at 249).  When a court "fail[s] to credit evidence" presented by the nonmoving party "that contradict[s] some of [the moving party's] key factual conclusions, the court improperly weigh[s] the evidence and resolve[s] disputed issues in favor of the moving party." *Id.* (internal quotations and citations omitted).

### B.   Motions For Leave To Amend Complaint

"[T]he grant or denial of leave to amend is committed to a district court's discretion." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  It is, however, "an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue delay, bad

faith or dilatory motive . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).  While leave to amend a complaint should be freely granted when justice so requires, *see* FED R. CIV. P. 15(a)(2), the Court may deny a motion to amend if such amendment would be futile.  *Foman*, 371 U.S. at 182; *Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012) (citing *James Madison Ltd. By Hecht v. Ludwig,* 82 F.3d 1085, 1099 (D.C. Cir. 1996)).  Where a plaintiff cannot "allege additional facts that would cure the deficiencies in [his] complaint," a District Court acts within its discretion in denying leave to amend the complaint as futile.  *See Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 131 (D.C. Cir. 2012).

## III.    DISCUSSION

If the plaintiff's motion for leave to amend is granted, the defendants' motion for summary judgment would become moot.  Therefore, the plaintiff's motion will be addressed first, followed by the defendants' motion.

### A.    The Plaintiff's Amendment Would Be Futile

The plaintiff seeks to add a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182.  PSAC ¶¶ 163–64.  The subsection cited states that any "place of public accommodation" may not discriminate "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" provided by that place of public accommodation.  42 U.S.C. § 12182(a).  The enforcement provisions of this portion of the ADA are set forth in 42 U.S.C. § 12188.  This subsection states that the only remedy available to private citizens for violations committed by places of public accommodation are injunctive in nature.  *See id.* 12188(a)(1) (cross-referencing 42 U.S.C. 2000a-3(a), which sets forth only injunctive relief).

To have standing to pursue any claim under Article III of the United States Constitution, the plaintiff must have first suffered an "injury in fact," i.e., "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted). Second, there must be "a causal connection between the injury and the conduct complained of," i.e., the injury alleged must be fairly traceable to the challenged action of the defendant. *Id.* Finally, it must be likely that the injury will be redressed by a favorable decision. *Id.* at 561. When declaratory or injunctive relief is sought, a plaintiff "must show he is suffering an ongoing injury or faces an immediate threat of [future] injury." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).

Since the only remedy available under the ADA for the plaintiff's claim is an injunction against future violations of the ADA, *see* 42 U.S.C. § 12188, the plaintiff must show that he has an injury that is fairly redressable by injunctive relief, i.e., that he is "suffering an ongoing injury or faces an immediate threat of [future] injury," *Dearth*, 641 F.3d at 501. The plaintiff does not make any allegations in the PSAC that he is suffering any type of "ongoing injury." Rather, he alleges that he was "discriminated against," and that the defendants "failed to take" steps to ensure he was not excluded from their services. PSAC ¶¶ 163–64. Since the plaintiff has failed to make any claim that he is subject to an ongoing injury, he cannot obtain any relief under the ADA that would redress his injury and, therefore, the plaintiff lacks standing to pursue an ADA claim under 42 U.S.C. § 12182(a). Since the plaintiff's additional count and factual allegations would not survive a motion to dismiss based on the plaintiff's lack of standing to pursue the claim, the plaintiff's Motion for Leave to Amend is denied as futile.

9

**B.    The Defendants' Motion For Summary Judgment Is Granted In Part And Denied In Part**

At the outset, the plaintiff states that he has "withdraw[n] his causes of action for fraud and civil conspiracy."  Pl.'s Opp'n Defs.' Mot. Summ. J. ("Pl.'s Opp'n") at 1 n.1.  Consequently, the defendants' Motion for Summary Judgment as to Count Seven for Civil Conspiracy and Count Eight for Fraud is granted as conceded.  The six remaining counts are discussed separately below, after the Court first addresses two threshold matters

**1.    *The Plaintiff Fails To Show Any Liability On Behalf Of Prince William Marina***

The defendants have submitted an affidavit stating that one of the defendants, Prince William Marina, Inc., "has no employees," "carries no inventory," and had "no involvement with . . . any conduct, action, communication, representation, repair or transfer of ownership of boats, or sales to or from Randolph Renchard."  Defs.' Mem. Ex. B (Affidavit of Carlton Phillips, Owner, Prince William Marine Sales, Inc. and Prince William Marina, Inc.) ¶ 3, ECF No. 49-3.  Although the plaintiff contends that Prince William Marina, Inc. "holds itself out as" having inventory and employees, the plaintiff's only evidence supporting this claim are advertisements and letterhead bearing the Prince William Marina logo.  *See* Pl.'s SMF ¶¶ 63–64; Pl.'s Opp'n Ex. 14, ECF No. 51-15.  Even assuming the plaintiff is correct as to this point, the plaintiff has presented no evidence that Prince William Marina, Inc. was involved in any way with the actions alleged in this suit, nor that the presence of the Prince William Marina logo on certain advertisements and letterhead is sufficient to render Prince William Marina, Inc. liable for the acts of Prince William Marine Sales, Inc. or its agents.  Consequently, Defendant Prince William Marina, Inc.'s motion for summary judgment is granted as to all claims.

**2.    *The Plaintiff's Alleged Lack Of A Yacht Valuation Expert In Plaintiff's Case-In-Chief Is Not Fatal To Any Of The Plaintiff's Claims***

The defendants contend that the plaintiff's failure to designate an expert in yacht valuation outside of his rebuttal expert will cause the plaintiff to "have no evidence as to damages during his case in chief" at trial.  Defs.' Reply Pl.'s Opp'n Defs.' Mem. ("Defs.' Reply") at 10, ECF No. 63.  The presence of an expert as to yacht valuation is not fatal to the plaintiff's claims for two reasons.

First, the plaintiff has pleaded damages, including that the value of his yacht was $1,280,000 after it was taken from him and traded to a third party.  FAC ¶ 74.  Thus, the plaintiff has at least put forth a claim of damages, based on the alleged market value at which the defendants valued the yacht for a future sale, which could be brought forward at trial.  The defendants are free to present evidence to rebut this valuation and the plaintiff is free to put on his rebuttal testimony, but at the summary judgment stage, the lack of a yacht valuation expert for damages purposes is not fatal to the plaintiff's claims.

Second, the defendants confuse the amount of damages with the presence of damages as an essential element of the plaintiff's claims.  *See* Defs.' Reply at 10–11.  None of the plaintiff's claims carry with them a required amount of damages in order to have a legally cognizable cause of action.  Rather, the defendants appear to be making a standing argument that the plaintiff has not been injured because, in the defendants' view, the plaintiff will not be able to present appropriate evidence at trial during his case-in-chief regarding the value of the yacht.  *See id.* This argument is a red herring, since the plaintiff's failure to prove a particular amount of damages does not preclude a finding of liability.  *See Mahallati v. Williams*, 479 A.2d 300, 307 (D.C. 1984) (remanding for new trial "limited solely to the issue of damages," while upholding liability finding).  In short, the mere fact that the plaintiff may not be able to prove a specific

amount of damages does not affect his ability to prove liability on behalf of the defendants.

Consequently, this argument is rejected as grounds for granting summary judgment to the

defendants.

        **3.**      ***Counts One ("Wrongful Repossession/Conversion") and Six (Unjust Enrichment)***

       The defendants assert that most of the plaintiff's claims should be dismissed because the

plaintiff had "an understanding of the transaction at issue," and that the removal of the yacht to

the defendants' marina "was a voluntary surrender on the part of the Plaintiff."  Defs.' Mem at

13.  At the summary judgment stage, where the non-moving party—here, the plaintiff—is

entitled to all reasonable inferences, there exist substantial issues of material fact that preclude

summary judgment as to these counts.

       For instance, the defendants contend that the various documents signed by the plaintiff,

including the handwritten note regarding the amount of money owed on his Account and the Bill

of Sale purporting to transfer ownership back to the defendants, are conclusive evidence that the

plaintiff entered into a voluntary transaction to which he must be held.  *See* Defs.' Mem. at 14.

To the contrary, the plaintiff, who has "learning and reading disabilities and cannot write or read

unless small words are used," FAC ¶ 19, disputes the meaning of the handwritten note regarding

his Account and understanding what he was doing in signing the Bill of Sale, *see* Pl.'s SMF ¶¶

33, 38, 54–57.

       Under District of Columbia law, a contract is valid only if there is "(1) an intention of the

parties to be bound, and (2) an agreement as to all material terms."  *Gaujacq v. EDF, Inc.*, 601

F.3d 565, 579 (D.C. Cir. 2010).  Drawing all inferences in favor of the plaintiff, there is a dispute

as to whether the plaintiff intended to be bound by any of the aforementioned documents and,

since he avers he did not understand them, whether there was any "agreement as to all material

terms," or, indeed, whether the plaintiff was *capable* of coming to an agreement as to all material terms. *See Hernandez v. Banks*, 65 A.3d 59, 66–67 (D.C. 2013) (holding that contract with person who, "by reason of mental illness or defect . . . is unable to understand in a reasonable manner the nature and consequences of the transactions" is "voidable" if "disaffirmed or avoided by the incapacitated party") (quoting RESTATEMENT (SECOND) OF CONTRACTS § 15 (1981)). Considering these substantial questions, and the expert reports submitted by the plaintiff and defendants, there is a material factual dispute as to whether the plaintiff could enter into a valid contract by reason of his mental and physical disabilities, and, consequently, whether the note regarding his Account and later Bill of Sale are sufficient to prove that the plaintiff was able to understand the consequences of his actions. Since this is the only substantive argument put forward by the defendants as to Counts One and Six, summary judgment as to those counts is denied.

### 4. *Counts Three (Negligence) And Four ("Gross Negligence")*

The defendants next contend that the plaintiff cannot pursue his negligence and gross negligence claims because those claims do not exist "independent of the contract" between the plaintiff and the defendants. Defs.' Mem. at 19. The Court agrees with the defendants. Although the plaintiff alleges that the "Defendants, like any other joe on the street, have a duty not to take the plaintiff's yacht," Pl.'s Opp'n at 8, the plaintiff's attempt to impart a general duty on the defendants separate and apart from the contractual relationship(s) between them must fail.

Under District of Columbia law, a plaintiff claiming negligence "must provide evidence that: '(1) [the defendants] owed a duty of care to [the plaintiff]; (2) [the defendants] breached that duty; and (3) the breach of duty proximately caused the damages to [the plaintiff].'" *Sullivan v. AboveNet Commc'ns*, No. 14-CV-431, 2015 WL 1432612, at *4 (D.C. Mar. 26, 2015) (quoting *Tolu v. Ayodeji*, 945 A.2d 596, 601 (D.C. 2008)). "The foundation of modern

negligence law is the existence of a duty owed by the defendant to the plaintiff." *N.O.L. v. District of Columbia*, 674 A.2d 498, 499 n.2 (D.C. 1995).  To determine whether a party owed a duty of care to another party, courts "'rely[] on the concept of 'forseeability'' and look[] to the 'relationship between the plaintiff and the defendant.'"  *Allen v. District of Columbia*, 100 A.3d 63, 84 n.16 (D.C. 2014) (quoting *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 793–94 (D.C. 2011) (en banc)).  Here, the only relationship between the plaintiff and the defendants was that of customer to merchant, and the contours of that relationship were defined by the various contracts entered into by the parties.

The District of Columbia Court of Appeals has found that a "tort must exist in its own right independent of the contract, and any duty upon which the tort is based must flow from considerations other than the contractual relationship." *Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1089 (D.C. 2008).  In this matter, there is no relationship between the parties other than the contractual relationship; otherwise the defendants and plaintiff are strangers to one another.  Any duty of care owed by the defendants to the plaintiff was defined by their contractual relationship.  The negligence claim raised by the plaintiff cannot stand apart from the plaintiff's contractual claims, since, if the defendants were, as the plaintiff states, just "a joe on the street," Pl.'s Opp'n at 8, the defendants would owe no duty of care to the plaintiff.  Consequently, the plaintiff's claims for negligence and gross negligence must fail since the parties owed each other no duty of care other than that encompassed by the contracts between them.  *See Choharis*, 961 A.2d at 1089.  The defendants' motion for summary judgment is granted as to counts three and four, for negligence and gross negligence, respectively.

**5.      *Count Five (Breach Of Contract/Breach Of Implied Covenant Of Good Faith And Fair Dealing)***

As to Count Five, the breach of contract and breach of implied covenant of good faith and fair dealing, Defendant PWMS[4] merely repeats arguments that are predicated on a misunderstanding of the plaintiff's claim.  Indeed, the Court has already rejected what were virtually identical arguments in the defendants' motions to dismiss.  The defendant contends that the plaintiff's "alleged breach of contract claim is based entirely on the written sales agreement." Defs.' Mem. at 18.  To the contrary, although the breach of contract claim makes reference to the written sales agreement entered into by the parties, it notes that the sales agreement "provide[d] no provisions for repair or maintenance of the yacht."  FAC ¶ 126.  Since the yacht allegedly was seized to satisfy the Plaintiff's Account, the plaintiff refers to the sales agreement, which "provide[s] express provisions for the repossession of the collateral (the yacht)," FAC ¶ 127, to differentiate that contract from the oral agreement at issue, which contained no such provisions, *see* Pl.'s Opp'n at 8; *see also* Hrg. Tr. (May 22, 2014) at 36:20-25 ("The plaintiff's claim, however, is that the defendants repossessed the yacht despite the fact that the plaintiff never defaulted *on any agreement*, thus breaching the contractual provisions that authorize repossession only in limited circumstances.").

To be clear, the breach of contract claim states that Defendant PWMS' "conduct constitutes a breach of the parties' agreement," FAC ¶ 132, referring to the Plaintiff's Account, and that Defendant PWMS "breach[ed] . . . its duty of good faith and fair dealing," when it used the keys it retained for maintenance to seize the yacht, despite "express provisions in the Sales Agreement" that implied only a default on that agreement could result in a repossession, *id.* ¶¶ 129, 132; Pl.'s Opp'n at 8.  The defendant does not assert that it had the right to repossess the

---

[4] Only Defendant PWMS is named in Count Five.

plaintiff's yacht for failure to pay the maintenance fees, and a reasonable juror could infer that the defendants breached their duty to uphold their end of the contract, namely, to allow the plaintiff to continue to pay $500 a month until the debt was paid off, and, in bad faith, seized the plaintiff's yacht.  Consequently, the defendants' motion for summary judgment is denied as to Count V.

### 6.     *Count Two: Violation Of The CPPA*

The defendants challenge the plaintiff's CPPA claim in two ways: first, they contend that Virginia, not D.C., law should apply; and, second, by addressing the statutory requirements for each section of the CPPA the plaintiff accuses the defendants of violating.  Defs.' Mem. at 22–40.  Each potential ground for summary judgment is addressed below.

#### a)     *D.C. Law Applies*

Although the defendants are correct that this Court's finding in *Renchard I* that D.C. law applied to this action is not preclusive, the defendants have provided no evidence to show that the initial determination was incorrect.  In *Renchard I*, the Court found that D.C. law was favored because two of the four factors contemplated by the District of Columbia's modified governmental interests test for determining choice of law questions—where the injury occurred and the place where the conduct causing the injury occurred—clearly favored the District of Columbia, while the third and fourth factors—the domicile of the parties and the place where the relationship between the parties is centered—favored either Maryland, Virginia, or D.C., without a strong showing as to any venue.  *Renchard I*, 28 F. Supp. 3d at 13–14.

The defendants now assert that the CPPA does not apply to extraterritorial conduct and, consequently, the law of Virginia should apply in this matter, or in the alternative, that Virginia's interests are stronger.  *See* Defs.' Mem. at 22–23 (relying on *Nelson v. Nationwide*, 659 F. Supp. 611 (D.D.C. 1987)).  The sole case on which the defendants rely is a nearly thirty year old

district court opinion that devotes a scant two paragraphs to its choice of law analysis regarding

the District's CPPA.  *Nelson*, 659 F. Supp. 2d at 616–17.  In *Nelson*, the court held that the

CPPA could not reach a mortgage agreement entered into in Virginia where the plaintiff was

raising claims based on actions that occurred only in Virginia.  *See id.* at 613–14.  By contrast,

the CPPA claims in this matter rely, at base, on conduct that unequivocally occurred in the

District of Columbia, namely, the defendants' use of keys retained for conducting repairs to the

plaintiff's yacht to seize the yacht and return it to Virginia.  FAC ¶¶ 98–114.  While the

connection of the plaintiff's claims to the District of Columbia in *Nelson* was attenuated and

based solely on that plaintiff's residency and the object of the mortgage's location in the District

of Columbia, *Nelson*, 659 F. Supp. at 616, the plaintiff in the instant matter avers that the

defendants' actions *in the District of Columbia* gave rise to the plaintiff's claims under the

CPPA, FAC ¶¶ 98–114.

As for the Commonwealth of Virginia's interests in this matter, the reasoning in

*Renchard I* remains unchanged by any new information cited by the defendants.  Although the

defendants contend that certain aspects of the conduct complained of in this matter occurred in

Virginia and Virginia has a greater interest in regulating Virginia merchants than the District of

Columbia, at base, this matter still revolves entirely around an alleged wrongful seizure of the

plaintiff's yacht when it was moored at Columbia Island Marina in Washington, D.C.  Although

the Commonwealth may have interests in regulating its merchants, the injury complained of, and

direct conduct contributing to that injury, occurred in Washington, D.C.  Therefore, the

defendants have presented no persuasive evidence or arguments requiring the revisiting of the

choice of law determination made in *Renchard I*.  District of Columbia law therefore governs

this action.[5]  The Court now turns to examine each portion of the CPPA that the plaintiff alleges the defendants violated.

>    b)    *D.C. Code §§ 28-3904(e–f)*

The plaintiff alleges that the defendants' failure to notify him that they would use the keys they kept for the purpose of conducting repairs on the plaintiff's yacht for seizing it constitutes a "misrepresentation as to a material fact which has a tendency to mislead" and also "failed to state a material fact . . . [that] tends to mislead" for the purposes of the CPPA.  FAC ¶¶ 100–01; *see also* D.C. Code §§ 28-3904(e–f).  The defendants contend that they did not violate these sections of the CPPA because the defendants used the keys "to make repairs as promised."  Defs.' Mem. at 24.  The defendants do not deny any intention to use the keys to seize the yacht at some point in the future.  *See* Defs.' Mem. at 24; Defs.' Reply at 17.  What the defendants knew at the time they made representations to the plaintiff about what the retained keys to his yacht would be used for is a material fact at issue that precludes summary judgment.

>    c)    *D.C. Code §§ 28-3904(o), (p), (q)*

The plaintiff alleges that the defendants did not "supply Plaintiff with a service contract, promissory note, or any other type of evidence of indebtedness that Plaintiff could execute evidencing that" the plaintiff "had authorized certain repairs and maintenance" or "that the yacht actually required the repair service being provided," in violation of D.C. Code §§ 28-3904(o–p).  FAC ¶ 103.  The plaintiff further alleges that the defendants' demand for a lump sum payment violates D.C. Code § 28-3904(q), which prohibits "fail[ing] to supply to a consumer a copy of a

---

[5] To the extent that defendants argue certain portions of the plaintiff's CPPA claims should be evaluated under Virginia law even if the entire action is not evaluated under Virginia law, the Court addresses those arguments in the context of addressing the specific statutory clause allegedly violated.

sales or service contract, lease, promissory note, trust agreement, or other evidence of

indebtedness which the consumer may execute."

The defendants counter that the plaintiff was provided with monthly invoices regarding

the maintenance performed and "only minimal work was performed in the District of Columbia."

Defs.' Mem. at 24.  The monthly invoices cited by the defendants do not show that they allowed

the plaintiff to authorize certain repairs or that the yacht actually needed those repairs, nor do

they indicate where the repairs were made, or, for the most part, provide executable documents.

*See generally* Defs.' Ex. 220, ECF No. 49-44.  The defendants' statement that eleven "tickets"

for maintenance work occurred in the District of Columbia concedes that the CPPA applies to

this claim, and the remainder, even if performed in Virginia, could arguably fall within the types

of services the plaintiff would "receive" in the District of Columbia, since that is where the

plaintiff's yacht was slipped.  *See* D.C. Code 28-3901(c) (noting purpose of CPPA is to create

"an enforceable right to truthful information from merchants about consumer goods and services

that are or would be purchased, leased, *or received*, in the District of Columbia.") (emphasis

added).  Consequently, there are material factual disputes about the necessity of the repairs

performed and whether the plaintiff was provided the ability to sign off on those services, such

that summary judgment is precluded as to claims of violations of D.C. Code § 28-3904(o–q).[6]

### d)      D.C. Code § 28-3904(m)

The plaintiff claims that the defendants' demands for payment, accompanied by the threat

of repossession, through email and other correspondence, constitutes a violation of D.C. Code §

28-3904(m)'s prohibition of "harass[ing] or threaten[ing] a consumer with any act other than

legal process."  The defendants contend that the tone of the emails at issue could not be viewed

---

[6] The plaintiff does not, as the defendants contend, admit that he "owes" the defendants $73,000 based on his account.  *Compare* Defs.' Mem. at 26 *with* Pl.'s SMF ¶ 35.

as threatening and, in any event any such discussions occurred outside the District of Columbia.

Defs.' Mem. at 26.  As previously mentioned, the threats involved services the plaintiff was

receiving in the District of Columbia, and there is a disputed issue as to whether a reasonable

person would feel threatened by the defendants' communications with the plaintiff.  Therefore,

summary judgment as to a potential violation of D.C. Code § 28-3904(m) is denied.

e)      *D.C. Code § 28-3904(r)(1) and (5)*

The plaintiff claims that the defendants extended "progressively larger and larger loans to

Plaintiff knowing that he could not pay the $73,847.63 lump sum due," thus violating D.C. Code

§ 28-3904(r)(1), FAC ¶ 108, which prohibits the making or enforcing of "unconscionable terms

or provisions of sales or leases," where there is "knowledge by the person at the time credit sales

are consummated that there was no reasonable probability of payment in full of the obligation by

the consumer."  The plaintiff also alleges a violation of D.C. Code § 28-3904(r)(5),[7] which

prohibits taking "advantage of the inability of the consumer reasonably to protect his interests by

reasons of age, physical or mental infirmities, ignorance, illiteracy, or inability to understand the

language of the agreement, or similar factors."  *See* FAC ¶ 114.  The defendants respond only by

asserting that the agreements at issue were not signed in the District of Columbia, Defs.' Mem. at

27, but, as previously mentioned, the Plaintiff's Account clearly contemplated services the

plaintiff would receive in the District of Columbia.  Thus, the defendants' motion for summary

judgment as to purported violations of D.C. Code §§ 28-3904(r)(1) and (5) is denied.

f)      *Failure To Comply With 16 DCMR § 340.4*

The plaintiff alleges that the defendants failed to follow District of Columbia Municipal

Regulations when they "repossessed" the yacht.  FAC ¶¶ 110–13.  The defendants rightfully

---

[7] This claim is incorrectly labeled in the FAC as a violation of D.C. Code 28-3904(q).  FAC ¶ 114.

point out that 16 DCMR §§ 340–349 applies only to "motor vehicles," and a boat is not a "motor vehicle" as defined by District of Columbia regulations.  16 DCMR § 399.1; D.C. Code § 50-601(6).  The plaintiff offers no counterargument to the defendants' contention.  *See generally* Pl.'s Opp'n.  Consequently, summary judgment is granted to the defendants as to the plaintiff's 16 DCMR § 340.1 claim.

## IV.  CONCLUSION

For the foregoing reasons, the plaintiff's Motion for Leave to File is denied.  Defendant Prince William Marina, Inc. is dismissed from this action.  The remaining defendant's motion for summary judgment is granted as to Counts Three and Four; granted as conceded as to Counts Seven and Eight; granted in part as to Count Two, regarding the purported violation of 16 DCMR § 340.4.; and denied in all other respects.  With all dispositive motions resolved, the parties shall appear for a pre-trial conference on June 19, 2015, unless the parties request referral to a Magistrate Judge for mediation and settlement discussions.  Otherwise, the parties shall be prepared for trial to begin at 9:15 a.m. on July 6, 2015.

An Order consistent with this Memorandum Opinion will issue contemporaneously.

Date: April 9, 2015

_____
BERYL A. HOWELL
United States District Judge